**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**HOUSTON LAWRENCE, ET AL.** **CIVIL ACTION**

**VERSUS**

**CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE, ET AL.** **NO. 23-01508-BAJ-SDJ**

**RULING AND ORDER**

Before the Court is Defendants East Baton Rouge Parish Sheriff Sid J. Gautreaux, III, Chad Felps, Tanner Jenkins, Eno Guillot, James Cooper, and N. Dartez's ("Sheriff Defendants") **Motion to Dismiss (Doc. 88).** Plaintiffs oppose the Motion. (Doc. 91). The Sheriff Defendants filed a Reply Brief. (Doc. 94). For the following reasons, the Sheriff Defendants' Motion will be **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL BACKGROUND

This case arises out of an alleged series of illegal strip-searches, false arrests, thefts, unconstitutional interrogations, and the use of excessive force at three law enforcement "black sites," including the "BRAVE Cave." (Doc. 81, ¶¶ 1–2). "BRAVE" is an acronym for "Baton Rouge Area Violence Elimination," and "Cave" is the colloquial term for an offsite warehouse used by law enforcement officers to allegedly violate detainees' constitutional rights. (*Id.* at ¶ 38). The BRAVE team was the "Street Crimes" or "Violent Crime Enforcement" unit of the Baton Rouge Police Department ("BRPD"). (*Id.* at ¶ 39). Plaintiffs provided the following photo allegedly depicting the BRAVE Cave:



**Fig. 1 – 2864 Shelley Street warehouse, aka the "BRAVE Cave" aka "Plank Street Facility"**

(*Id.* at ¶ 50). Plaintiffs Carrie Mealey and Houston Lawrence "now sue for accountability and justice for how they were treated." (*Id.* at ¶ 5).

Plaintiffs filed this lawsuit against the City of Baton Rouge and the Parish of East Baton Rouge (the "City/Parish"), Benchmark Group, LLC (the owner of the building where several incidents allegedly occurred), and officers from the East Baton Rouge Sheriff's Office ("EBRSO") and Baton Rouge Police Department ("BRPD"). BRPD Defendants include: (1) Troy Lawrence, Jr.; and (2) Tafari Beard.[1] (*Id.* at ¶¶ 10–24). EBRSO Defendants include: (1) Sheriff Sid J. Gautreaux, III;

[1] The Court dismissed BRPD Chief Murphy Paul from this case on Plaintiffs' Notice of Voluntary Dismissal Without Prejudice Pursuant to Federal Rule 41(a)(1)(A)(i). (Doc. 89; Doc. 90).

(2) Chad Felps; (3) Tanner Jenkins; (4) Eno Guillot; (5) James Cooper; and (6) N. Dartez. (*Id.* at ¶¶ 10–24).

Plaintiffs also name Doe Defendants 1–20 as "persons presently unknown to have contributed to [Plaintiffs' allegations] after Plaintiffs' diligent search and inquiry." (*Id.* at ¶ 23). Plaintiffs contend that Doe Defendants 1–20 were "officers present at one of the three law enforcement black sites described [in the Complaint] when Plaintiffs were imprisoned, searched, and interrogated there." (*Id.* at ¶ 24).

Finally, Plaintiffs name ABC Insurance Company Defendants 1–10 as "not-yet-identified insurance companies that hold polices which cover any or all of the co-Defendants for the actions alleged herein." (*Id.* at ¶ 27).

The Sheriff Defendants, which include Gautreaux, Felps, Jenkins, Guillot, Cooper, and Dartez, now move to dismiss Plaintiffs' claims. (*Id.*). For the purposes of the Sheriff Defendants' Motion to Dismiss, the Court accepts the following allegations as true, as the law requires at this stage of the litigation. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (When conducting its inquiry, the Court must "accept[] all well pleaded facts as true and view[] those facts in the light most favorable to the plaintiff.").

### A. May 13, 2022 Interaction Involving Plaintiff Carrie Mealey and her Son Shermon Mealey (the "May 13, 2022 Mealey Interaction").

Plaintiff Carrie Mealey ("Mealey") was sixty-eight years old at the time of the events alleged in this case. (Doc. 81 ¶ 3). Her son Shermon Mealey ("Shermon") is paraplegic, paralyzed from the waist down. (*Id.* at ¶¶ 29–30). On May 13, 2022, BRPD officers pulled Shermon out of his car at a gas station and handcuffed him. (*Id.*).

Officers placed Shermon in a rolling office chair, and then loaded Shermon into a BRPD vehicle. (*Id.* at ¶¶ 33–34). While loading Shermon into the BRPD vehicle, officers dropped Shermon heavily to the ground. (*Id.* at ¶ 35). Officers then took Shermon to a warehouse near Plank Road, colloquially termed the "BRAVE Cave." (*Id.* at ¶ 37).

At the BRAVE Cave, officers fingerprinted and strip-searched Shermon. (*Id.* at ¶¶ 51–52). Officers also subjected Shermon to a visual body cavity search. (*Id.* at ¶ 53). Because Shermon is paralyzed, he wears adult diapers. (*Id.* at ¶ 54). During the strip-search, officers removed Shermon's diaper and exposed his genitalia. (*Id* at ¶ 55). Because he cannot feel below the waist, Shermon does not know if officers engaged in a penetrative cavity search. (*Id.* at ¶ 56). Shermon was interrogated at the BRAVE Cave. (*Id.* at ¶ 57).

Officers then transported Shermon to the East Baton Rouge Parish Prison ("EBRPP"), where they booked him for alleged crimes. (*Id.* at ¶ 58). At EBRPP, Shermon was subjected to another visual body cavity search. (*Id.* at ¶ 59). Officers knew Shermon would be subjected to another strip-search when they booked him into EBRPP. (*Id.* at ¶ 60). There was no reason to think Shermon had weapons or contraband at EBRPP because officers had already subjected him to a prior visual body cavity search and he remained in custody until booking. (*Id.* at ¶ 61). The District Attorney "no-billed" every charge against Shermon, and Shermon was released from EBRPP. (*Id.* at ¶¶ 62–63).

### B. June 28, 2023 Interaction Involving Plaintiff Carrie Mealey and her Son Shermon Mealey (the "June 28, 2023 Mealey Interaction").

On June 28, 2023, BRPD officers raided Mealey's home. (*Id.* at ¶ 64). Officers used the BRPD Bearcat vehicle, a militarized armored truck, for the raid. (*Id.* at ¶ 66). Officers alleged that they possessed a warrant for the raid but failed to show the warrant to Mealey. (*Id.* at ¶ 67). No warrant for the Mealey home has been filed into the record of this case to confirm the existence of same.

During the search of Mealey's home, officers once again detained Shermon. (*Id.* at ¶¶ 68–69). Officers removed Shermon from his wheelchair and handcuffed him. (*Id.* at ¶ 69). Officers used so much force to handcuff Shermon that they injured his wrists and arms. (*Id.* at ¶ 70).

Officers transported both Shermon and Mealey, a 68-year-old grandmother, to the BRAVE Cave. (*Id.* at ¶ 71). At the BRAVE Cave, officers performed another visual body cavity search of Shermon, removing his diaper and exposing his genitalia. (*Id.* at ¶ 72). Officers again interrogated Shermon. (*Id.* at ¶ 73).

Officers then transported Shermon to EBRPP, where they booked him for alleged crimes. (*Id.* at ¶ 77). Shermon was subjected to a visual body cavity search at EBRPP. (*Id.* at ¶ 84). While at EBRPP, Shermon asked for medical attention, and was instead placed in "punitive lockdown solitary confinement."[2] (*Id.* at ¶ 86).

Officers placed tight handcuffs on Mealey, causing her extreme pain and welts on her wrists that lasted for months. (*Id.* at ¶ 74). Officers also interrogated Mealey.

---

[2] Plaintiffs do not define this phrase or provide additional context describing "punitive lockdown solitary confinement" within EBRPP.

(*Id.* at ¶ 75). Officers took Mealey to urgent care and then transported her to EBRPP. (*Id.* at ¶¶ 78–79). At EBRPP, Mealey was subjected to a visual body cavity search, involving squatting and coughing. (*Id.* at ¶ 83).

Officers booked Mealey for alleged crimes, including obstruction of justice, illegally supplying a felon with ammunition, and illegally supplying a felon with a firearm. (*Id.* at ¶ 79). Mealey was allegedly charged with "obstruction of justice" because she went to the BRPD evidence division, requested that BRPD return her firearms, and BRPD returned Mealey's firearms to her. (*Id.* ¶ 80). Beard's affidavit in support of the purported arrest warrant allegedly stated that "the firearms never should have been released" to Mealey. (*Id.* ¶ 81). Plaintiffs contend that Beard should have filed a complaint against the BRPD officer who released the firearms, but instead, BRPD arrested Mealey "because [another BRPD officer] gave her back her firearms." (*Id.* ¶ 82).

Once again, the district attorney "no-billed" every charge against both Shermon and Carrie Mealey. (*Id.* at ¶ 85).

### C. 2019 Interactions Involving Plaintiff Houston Lawrence (the "2019 Lawrence Interactions").

Plaintiff Houston Lawrence also allegedly had problematic interactions with the BRPD and the EBRSO. In 2019, Lawrence was handcuffed and taken to a BRPD/EBRSO black site. (*Id.* at ¶¶ 80–89). At the black site, BRPD officers interrogated Lawrence and allegedly stole his money. (*Id.* at ¶¶ 92–93). Officers never returned Lawrence's money to him or logged the money into evidence. (*Id.* at ¶ 94). Officers eventually released Lawrence without booking him into EBRPP. (*Id.* at ¶ 95).

Later in 2019, BRPD officers again encountered Lawrence. He was again handcuffed, and this time transported to the BRAVE Cave. (*Id*. at ¶¶ 96–97). At the BRAVE Cave, officers strip-searched and interrogated Lawrence. (*Id*. at ¶ 98). Officers again released Lawrence without booking him into EBRPP. (*Id*. at ¶ 99).

**D. April 21, 2022 Interaction Involving Plaintiff Houston Lawrence ("April 21, 2022 Lawrence Interaction").**

On April 21, 2022, BRPD and EBRSO officers, including Chad Felps and Eno Guillot, raided Lawrence's home.[3] (*Id*. at ¶¶ 100–102). While they raided his home, officers handcuffed Lawrence and made him wait outside. (*Id*. at ¶ 103).

Lawrence's girlfriend heard officers conducting the search say, "any money you find, keep it. Free money." (*Id*. at ¶ 104). Lawrence had approximately $15,000 in cash at his home, all of which was allegedly taken by the officers. (*Id*. at ¶ 105). Officers only reported seizing $7,601. (*Id*. at ¶ 106).

Although Lawrence had surveillance cameras in his home, he was unable to secure the footage of the raid because officers took the SD cards from the system. (*Id*. at ¶ 107).

Officers then transported Lawrence to a black site believed to be the BRAVE Cave, including the following officers: (1) Troy Lawrence, Jr.[4]; (2) Felps; (3) Jenkins; and (4) Guillot. (*Id*. at ¶¶ 109–112). Officers placed a bag over Lawrence's head while

[3] Plaintiffs do not allege the basis for this raid.

[4] For ease of reference, Troy Lawrence, Jr. will be referred to as "Lawrence, Jr." in this Ruling and Order, while Houston Lawrence will be referred to as simply "Lawrence."

he was transported to the black site. (*Id.* at ¶ 114). In the vehicle, officers allegedly "used force" on Lawrence and asked him questions.[5] (*Id.* at ¶ 115).

Once at the black site, officers strip-searched Lawrence and made him squat and cough while nude. (*Id.* at ¶ 118). Officers then handcuffed Lawrence to a table. (*Id.* at ¶ 119). Lawrence requested to speak to an attorney, but officers refused to permit him to do so and continued interrogating him. (*Id.* at ¶ 120). Officers also allegedly injected a milky white substance into Lawrence with a syringe. (*Id.* at ¶ 121). Officers beat Lawrence so badly that they cut and bruised his body and tore his right rotator cuff. (*Id.* at ¶ 123).

Because Lawrence did not give the officers the information they were seeking, officers brought Lawrence's girlfriend to the BRAVE Cave and threatened to arrest her. (*Id.* at ¶ 124). Lawrence's girlfriend was detained and placed into handcuffs. (*Id.* at ¶ 125). Lawrence was then transported and booked into EBRPP, where he was strip-searched once more. (*Id.* at ¶¶ 126–28). Lawrence received no medical attention, despite his manifest injuries. (*Id.* at ¶ 129). Several months later, in July 2022, Lawrence was released on bond. (*Id.* at ¶ 130).

**E. October 20, 2022 Interaction Involving Plaintiff Houston Lawrence ("October 20, 2022 Lawrence Interaction").**

On October 20, 2022, officers from the BRPD and EBRPSO, including Tanner Jenkins, Chad Felps, Troy Lawrence, Jr., N. Dartez, and James Cooper, raided

[5] The Complaint does not describe the type of force or the severity of the force that officers allegedly used on Lawrence in the vehicle.

Lawrence's apartment once more. (*Id*. at ¶ 131). Officers again arrested Lawrence. (*Id*. at ¶ 132).

Lawrence allegedly had $3,500 in cash on his person at the time, which officers again confiscated. (*Id*. at ¶¶ 133–34). The officers only booked $185 into evidence. (*Id*. at ¶ 134). In the street outside Lawrence's home, officers searched Lawrence, pulling down his pants and undershorts to his knees and exposing his genitals. (*Id*. at ¶¶ 135–36).

Officers then took Lawrence to a different black site. (*Id*. at ¶ 137). Officers referred to this black site in the police report as the "EBRSO Narcotics office," although it is owned and operated by Defendant Benchmark Group, LLC. (*Id*. at ¶¶ 141–42).

At the black site, officers subjected Lawrence to another strip-search and visual body cavity search. (*Id*. at ¶ 144). Lawrence requested to speak with an attorney, but the officers refused his request and continued interrogating him. (*Id*. at ¶ 146).

Felps allegedly told Lawrence that officers "need[ed] keys or a dead body." (*Id*. at ¶ 147). Jenkins told Lawrence that he was a federal agent, and that he gets paid good money to "keep assholes like Houston [Lawrence] off the street." (*Id*. at ¶ 148). Jenkins is actually an EBRSO captain, not a federal officer. (*Id*. at ¶ 150).

After interrogating Lawrence, officers again took him to EBRPP and booked him. (*Id*. at ¶ 151). Officers strip-searched Lawrence at EBRPP. (*Id*. at ¶ 153). Officers did not document any of the strip or cavity searches. (*Id*. at ¶ 156).

**F. BRPD and EBRPSO Policies.**

BRPD policy allows for arrestees to be strip-searched in instances where the officer has "articulate, reasonable suspicion that this particular arrestee may have weapons or contraband on his person." (*Id*. at ¶ [*sic*.] 32). Reasonable suspicion is based on the following factors:

(1) The nature of the offense charged.

(2) The arrestee's appearance and conduct.

(3) The circumstances of the arrest.

4) The arrestee's prior record.

(*Id*. at ¶ [*sic*.] 32). BRPD also allows strip-searches of non-arrestees based on "individualized articulable reasonable suspicion to frisk, probable cause to search, consent, or a court order." (*Id*. at ¶ 157).

The mechanics of a strip-search are far different than a usual frisk. (*See id*. at p. 17). A strip-search involves a "visual inspection of an individual who has disrobed including the hair, mouth, ears, nostrils, groin area and buttocks to locate weapons, contraband or evidence." (*Id*. at ¶ 160). A frisk is simply a "pat down of the outer garments specifically for weapons." (*Id*. at ¶ 159).

EBRPSO has its own search and seizure policy. (*Id*. at ¶ 163). It states, in totality, that: "All seizures by this office will comply with relevant federal and state

law governing the seizure of persons and property," and that because "case law regarding search and seizure is constantly changing and subject to interpretation by the courts, each member of this office is expected to act in each situation according to current training and his/her familiarity with clearly established rights as determined by case law." (*Id*. at ¶ 165).

**G. Alleged History of Misconduct within BRPD and EBRPSO.**

In 2021, BRPD officers' use of strip-searches became a national news story. (*Id*. at ¶ 167). In 2021, BRPD strip-searched a man named Clarence Green and his juvenile brother. (*Id*.). The blowback from this story led to policymakers at the BRPD conducting a news conference affirming the conduct of the BRPD officers, clearing said officers of any wrongdoing, and seeking to imprison the attorney who released the video to the public. (*Id*. at ¶¶ 168–173).

Plaintiffs allege that strip-searches and black sites are used as a matter of course by officers with the BRPD and the EBRPSO. (*Id*. at p. 19). On June 10, 2023, BRPD officers, including Lawrence, Jr., performed a traffic stop on Ternell Brown and her husband. (*Id*. at ¶ 193). Officers allegedly searched the Browns' vehicle without warrant or consent. (*Id*.). Officers found only prescription medication in Brown's lawful possession. (*Id*.). Officers took Brown to the BRAVE Cave, where they subjected her to a strip and body cavity search. (*Id*.). BRPD officers allegedly forced Brown to spread her vagina and buttocks for inspection, and examined her vagina using a flashlight. (*Id*. at ¶ 194). Officers released Brown without charge. (*Id*. at ¶ 195).

Several internal affairs complaints were lodged against Lawrence, Jr. and related officers' misconduct at the black sites in 2023. (*Id.* at ¶ 196). BRPD did not take action until renewed media attention in September 2023. (*Id.* at ¶ 197). In response to public outcries, the BRAVE Cave was shuttered, and Lawrence, Jr. was forced out of the BRPD. (*Id.*). Plaintiffs assert that then-Chief Murphy Paul acknowledged that the issues arising from those officers' conduct were not rooted in individual faults, but with the "patterns and practices" of the BRPD Street Crime unit. (*Id.* at ¶ 210).

Zooming further out, Plaintiffs indicate that the current case is the latest swell in a decades-long current within the BRPD towards excessive force and a lack of accountability. (*Id.* at 23). Plaintiffs allege that as far back as September 2005, assisting law enforcement agencies were repulsed by the misconduct of BRPD officers. (*Id.* at ¶¶ 217–220). Plaintiffs cite a news article wherein a Michigan State Police spokeswoman allegedly told a reporter that their "troopers observed Baton Rouge police officers engage in actions that were an affront to their sense of dignity and respect." (*Id.* at ¶ 218). These sentiments were echoed in a formal letter of complaint issued by the Michigan State Police and the New Mexico State Police to the BRPD. (*Id.* at ¶ 219).

These opinions are not confined to external sources. In 2011, Plaintiffs allege that then-BRPD Chief Dewayne White stated that, in his opinion, *one in ten* BRPD officers—a full ten percent—fail to exercise basic levels of professionalism and

assume criminality on the basis of skin color. (*Id*. at ¶ 225). White was subsequently fired. (*Id*.).

The Complaint is replete with allegations that the BRPD, and by extension the City of Baton Rouge, has allowed law enforcement officials to operate in unconstitutional and insidious ways. (*Id*. at 25–27, 30 (detailing instances of BRPD officers engaging in acts of explicit racism, excessive force, unprompted searches and seizures, and unjustified arrests)). Plaintiffs also point to former BRPD deputy chief Carl Dunn's statements to various news publications, along with statistics released by the BRPD itself, asserting that there was no meaningful self-investigation of misconduct at BRPD prior to the events underlying Plaintiffs' Complaint. (*Id*. at 28, 32). Additionally, Defendant Lawrence, Jr.'s misconduct and dangerous temperament have been known to BRPD officials for years. (*Id*. at 34–42).

Plaintiffs allege that the EBRPSO has similarly failed to clothe itself in honor, referencing the allegations in several cases currently or previously before this Court as proof. (*Id*. at 27). Plaintiffs cite to instances of misconduct by EBRPSO officials, including the use of excessive force, which resulted in minimal punishment for offending officers. (*Id*. at 42–46).

In short, Plaintiffs allege that the cultures of both the BRPD and the EBRPSO are corrupt, and that the treatment each received at the hands of responding officers were the natural result of widespread trends and practices. (*See generally* Doc. 81).

## II. PROCEDURAL HISTORY

On October 18, 2023, Plaintiffs filed suit. (Doc. 1). Thereafter, the Sheriff Defendants filed a Motion to Dismiss and in the Alternative Motion to Strike. (Doc. 34). In the Motion, the Sheriff Defendants asked the Court to dismiss Plaintiffs' claims against them or to strike the portions of Plaintiffs' Complaint related to Shermon Mealey. (Doc. 34-1). The Court denied the Sheriff Defendants' Motion and granted Plaintiffs leave to amend their Complaint. (Doc. 80).

Plaintiffs then filed an Amended Complaint, asserting eight causes of action. (Doc. 81).

First, Plaintiffs bring claims under 42 U.S.C. § 1983 for unreasonable search and seizure, *Franks* liability, excessive force, theft of property, and violations of substantive due process (Count I, Section 1983 claims). (*Id.* at 47).

Second, Plaintiffs claim that Defendants conspired to deprive them of their civil rights (Count II, Section 1983 conspiracy). (*Id.* at 50).

Third, Plaintiffs allege that individual Defendants, not including Defendant Gautreaux, observed their fellow officers violate Plaintiffs' constitutional rights, and failed to intervene (Count III, failure to intervene). (*Id.* at 50–51).

Fourth, Plaintiffs assert a claim for municipal liability against the City/Parish for BRPD and EBRPSO's unconstitutional search policies, improper retention practices, improper supervision/discipline, deficient training, and pattern of

misconduct (Count IV, *Monell* claim against Gautreaux and City only).[6] (*Id*. at 51–52).

Fifth, Plaintiffs bring state law claims for violations of the Louisiana Constitution, false arrest, false imprisonment, assault, battery, negligence, negligent hiring and failure to train, and intentional infliction of emotional distress (Count V, state law claims). (*Id*. at 52).

Sixth, Plaintiffs assert that Defendants are jointly liable for a conspiracy to commit the listed state law violations (Count VI, state law conspiracy). (*Id*. at 54).

Seventh, Plaintiffs contend that Defendant Gautreaux and the City/Parish are responsible according to the theory of vicarious liability (Count VII, vicarious liability against Gautreaux and City). (*Id*.).

Eighth, Plaintiffs allege that Defendant Benchmark Group, LLC is liable under the theory of premises liability for the actions of other Defendants at the alleged black site purportedly owned by Benchmark (Count VIII, premises liability against Benchmark Group). (*Id*. at 55).

Now, the Sheriff Defendants move to dismiss Plaintiffs' claims against them. (Doc. 88). For the following reasons, the Motion will be **GRANTED IN PART** and **DENIED IN PART**.

[6] Plaintiffs also asserted this claim against Paul, who has been dismissed from this case.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

## IV. DISCUSSION

The Sheriff Defendants argue that dismissal of Plaintiffs' claims is warranted for the following reasons: (1) Plaintiffs' federal and state claims are prescribed; (2) the Sheriff Defendants are entitled to qualified immunity; (3) Plaintiffs fail to state a claim under Section 1983; (4) Plaintiffs fail to state a claim for municipal

liability under *Monell*; and (5) Plaintiffs fail to state a claim under state law. The Court will address each argument in turn.

**A. Whether Plaintiffs' Section 1983 Claims are Timely.**

The Sheriff Defendants argue that Plaintiffs' Section 1983 claims occurring before October 18, 2022, one year before this lawsuit was filed on October 18, 2023, are prescribed. (Doc. 88-1 at 6). Plaintiffs respond that their Section 1983 claims are not prescribed for three reasons:

(1) the doctrine of *contra non valentem* applies

(2) the continuing tort doctrine applies; and

(3) the existence of systemic misconduct allows Plaintiffs' claims to proceed, relying on *McNeal v. La. Dep't of Pub. Safety & Corr.*, 598 F. Supp. 3d 428 (M.D. La. 2022).

(Doc. 91 at 5–6).

**i. Applicable Prescriptive Period.**

Congress did not provide a statute of limitations for claims brought under 42 U.S.C. § 1983. The United States Supreme Court has held that a forum state's general or residual statute of limitations for personal injury claims applies to Section 1983 claims. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989). In Louisiana, the applicable prescriptive period was one year at the time of the facts alleged in this case.[7] La. Civ. Code art. 3492; *see also Brown v. Pouncy*, 93 F.4th 331, 332 (5th Cir.),

[7] The Louisiana prescriptive period applicable to Plaintiff's claims is one year. La. Civ. Code art. 3492 (repealed by Acts 2024, No. 423, § 2, eff. July 1, 2024). Currently, Louisiana's prescriptive period applicable to delictual actions is two years. La. Civ. Code art. 3493.1.

*cert. denied*, 145 S. Ct. 170, 220 L. Ed. 2d 28 (2024). Thus, Plaintiffs' Section 1983 claims are subject to a prescriptive period of one year. This means that, generally, for Plaintiffs' Section 1983 claims to be timely, the alleged facts underlying each claim must have occurred on or after October 18, 2022. (Doc. 1).

In the Complaint, Plaintiffs allege several interactions with officers occurring before October 18, 2022: (1) the 2019 Lawrence Interactions; (2) the April 21, 2022 Lawrence Interaction; and (3) the May 13, 2022 Mealey Interaction). (Doc. 1; Doc. 81). Under Louisiana law, if an action is prescribed on the face of the Complaint, the burden of proof shifts to the plaintiff to prove that prescription was suspended or interrupted. *Thomas v. City of Baker*, No. CV 23-193-JWD-SDJ, 2023 WL 7311180, at *4 (M.D. La. Nov. 6, 2023). To satisfy this burden, "[P]laintiff[s] must show that the cause of action for [their] injuries was not reasonably knowable. This is a heavy burden." *Miles v. MEMC Pasadena, Inc.*, No. 08-4436, 2009 WL 1323014, at *3 (E.D. La. May 8, 2009); *see also Big River Indus., Inc. v. Headwaters Res., Inc.*, 971 F. Supp. 2d 609, 624 (M.D. La. 2013) (citing *Campo v. Correa*, 828 So. 2d 502, 509 n.9 (La. 2002)).

"In applying the forum state's statute of limitations [on a Section 1983 claim], the federal court should also give effect to any applicable tolling provisions." *Smith v.*

---

However, Article 3493.1 has "prospective application only," and its two-year prescriptive period "shall apply to delictual actions arising after the [July 1, 2024] effective date of [Act 423]." TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315). Because the alleged facts underlying Plaintiff's claims occurred before July 1, 2024, the former Article 3492 and its one-year prescriptive period apply. *See Allied World Nat'l Assurance Co. v. Nisus Corp.*, 134 F.4th 821, 826 n.3 (5th Cir. 2025) (applying the former Article 3492's one-year prescriptive period to tort claim arising from facts occurring before July 1, 2024).

*Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016) (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993)). However, federal law governs when a Section 1983 claim accrues. *Smith*, 827 F.3d at 421 (citing *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998)). The United States Court of Appeals for the Fifth Circuit has emphasized that "[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Smith*, 827 F.3d at 421 (citing *Gartrell*, 981 F.2d at 257). As a result, the limitations period begins "when the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury.'" *Smith*, 827 F.3d at 421 (citing *Gartrell*, 981 F.2d at 257) (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980)).

Based on this legal framework, the Court will consider each of Plaintiffs' arguments indicating that their claims are not prescribed.

### ii. Whether the Doctrine of *Contra Non Valentem* Applies.

First, Plaintiffs argue that the doctrine of *contra non valentem* tolled the prescriptive period applicable to their Section 1983 claims. (Doc. 91 at 5–6). Under Louisiana law, *contra non valentem* is a doctrine that tolls the statute of limitations and is thus "an exception to the general rules of prescription."[8] *Ellis v. Evonik Corp.*,

[8] The doctrine tolls prescription only in these four "exceptional circumstances":

> (1) where there was some legal cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; (2) where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the plaintiff from availing himself of his cause of action; (3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; and (4) where

604 F. Supp. 3d 356, 363 (E.D. La. 2022) (citing *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994)). This doctrine suspends the applicable prescriptive period under certain circumstances, including situations in which the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. *Ellis*, 604 F. Supp. 3d at 363 (citing *Renfroe v. State ex rel. Dept. of Transp. & Dev.*, 809 So. 2d 947, 953 (La. 2002)).

But this exception, sometimes known as the "discovery rule," is available only in "exceptional circumstances." *Ellis*, 604 F. Supp. 3d at 364 (citing *Meggs v. Davis Mortuary Serv., Inc.*, 301 So. 3d 1208, 1213 (La. App. 5 Cir. 2020) (quoting *Renfroe*, 809 So. 2d at 953)). The law is clear that the prescriptive period begins to run once a party has "constructive knowledge . . . of the facts that would entitle him to bring a suit," even if he does not have actual knowledge of those facts. *Ellis*, 604 F. Supp. 3d at 364 (citing *Campo*, 828 So. 2d at 510). Similarly, "[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Smith*, 827 F.3d at 421 (citing *Gartrell*, 981 F.2d at 257).

In the context of excessive force claims, the Fifth Circuit has held that "[a]n excessive force claim generally accrues on the date when the force is inflicted." *Morrill v. City of Denton, Tex.*, 693 F. App'x 304, 306 (5th Cir. 2017) (citing *Price v.*

---

> the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 390 (5th Cir. 2021) (citing *Morgan v. Entergy New Orleans, Inc.*, 234 So. 3d 113, 116, 120 (La. Ct. App. 2017)).

*City of S.A.*, 431 F.3d 890, 893–94 (5th Cir. 2005).[9] A Section 1983 accrues when a plaintiff has "a complete and present cause of action." *Hammond v. New Roads City Police Dep't*, No. CIV.A.09-276-JJB, 2009 WL 3485944, at *1 (M.D. La. Oct. 28, 2009) (citing *Wallace v. Kato,* 549 U.S. 384, 388 (2007)). A plaintiff's cause of action is complete and present when he knows or should have known of his injuries. *Hammond*, 2009 WL 3485944, at *1 (citing *Walker v. Epps,* 550 F.3d 407, 414 (5th Cir. 2008) (applying the "known or should have known" standard post-*Wallace*)).

Based on Fifth Circuit precedent, the Court finds that Plaintiffs' Section 1983 claims accrued on the date of their alleged interactions with the Sheriff Defendants. Plaintiffs knew or should have known of their injuries on the date in which the Sheriff Defendants allegedly inflicted those injuries. Because Plaintiffs allege no facts to support the application of the *contra non valentem* doctrine here, the Court declines to find that this case presents an "exceptional circumstance" warranting the invocation of *contra non valentem* to toll Louisiana's one year prescriptive period applicable to Plaintiffs' Section 1983 claims.

[9] *See also Armstrong v. Serpas*, 670 F. App'x 851, 852 (5th Cir. 2016) ("[Plaintiff's] claims accrued [on] the date he alleges he was subjected to excessive force."); *Martinez v. El Paso Police Dep't*, 667 F. Supp. 3d 401, 406–07 (W.D. Tex. 2023) (rejecting plaintiffs' arguments to avoid accrual of statute of limitations and holding, "[p]laintiff alleges in her Complaint that the officers inflicted the allegedly excessive force on September 18, 2020. Plaintiff's § 1983 claim therefore accrued on that date."); *Boswell v. Jones*, No. 22-CV-1351, 2024 WL 4823872, at *1 (W.D. La. May 21, 2024), *report and recommendation adopted*, No. CV 22-1351, 2024 WL 4823233 (W.D. La. Nov. 18, 2024) ("'An excessive force claim generally accrues on the date when the force is inflicted.' [] Thus, when a plaintiff alleged that a police officer used excessive force in the course of an arrest, his Section 1983 claim for excessive force accrued on the date he alleged that he was subjected to the excessive force.") (internal citations omitted).

### iii. Whether the Continuing Tort Doctrine Applies.

Second, Plaintiffs argue that the continuing tort doctrine permits their claims to proceed. Under Louisiana law, "[w]hen tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated." *Williams v. Otis Elevator Co.*, 557 F. App'x 299, 301 (5th Cir. 2014) (citing *First Nat'l Bank v. Smith,* 29–350, p. 4 (La. App. 2 Cir. 4/2/97); 691 So.2d 355, 358)). For the continuous tort doctrine to apply, "the operating cause of the injury [must] be a continuous one which results in continuous damages." *Williams*, 557 F. App'x at 301 (citing *Crump v. Sabine River Auth.,* 98–2326, p. 7 (La. 6/29/99); 737 So.2d 720, 726). It does not apply if "the complained of actions by the defendant were simply the continued ill effects that arose from a single tortious act." *Williams*, 557 F. App'x at 301–02 (internal citations omitted).

Here, Plaintiffs allege discrete wrongs that occurred on separate dates, which Plaintiffs allege created a pattern of wrongs. Although Plaintiffs allege a pattern of wrongful conduct, the Circuit has held that the continuing tort doctrine "may be applicable where an individual suffers an ongoing and persistent injury, *rather than* a series of discrete injuries[.]" *Matthews v. Fleming*, 287 F. App'x 296, 298 (5th Cir. 2008) (emphasis added) (citing *Pete v. Metcalfe,* 8 F.3d 214, 218 (5th Cir. 1993); *Petrus v. U.S. Just. Dept.,* 18 F.3d 936, 936 (5th Cir. 1994)). Here, Plaintiffs allege a series of discrete injuries, which the Circuit has held is insufficient to warrant the application of the continuing tort doctrine. Accordingly, the continuing tort doctrine cannot save Plaintiffs' claims from prescription.

### iv. Whether "Systemic Conduct" Requires a Different Result.

Third, Plaintiffs argue that because Plaintiffs' claims arise from an ongoing pattern of constitutional violations, exacerbated by Defendants' concealment, Defendants' systemic conduct should toll the prescriptive period. Plaintiffs cite the Court's opinion in *McNeal* as support for their argument. *McNeal*, 598 F. Supp. 3d at 428.

But the Court in *McNeal* did not address timeliness. *Id.* at 440–41 ("Here, the facts alleged in the Amended Complaint, accepted as true and viewed in the light most favorable to Plaintiff, support the reasonable inference that a pattern of over-detention existed at the DPSC that was caused by a lack of adequate policies, training, and supervision to ensure inmates were timely released from custody."). Accordingly, and for the reasons described above, Plaintiffs' argument regarding systematic conduct does not persuade otherwise.

### v. Conclusion: Plaintiffs' Prescribed Section 1983 Claims.

For these reasons, Plaintiffs' Section 1983 claims (Count I) arising from the following pre-October 18, 2022 encounters are prescribed and will be **DISMISSED** against the Sheriff Defendants **WITH PREJUDICE**: (1) the 2019 Lawrence Interactions; (2) the April 21, 2022 Lawrence Interaction; and (3) the May 13, 2022 Mealey Interaction.[10] Although the Court cannot act on these claims because they are time-barred, the Court finds the allegations underlying each of these interactions to be reprehensible.

---

[10] Each encounter is described in detail in the Background Section, *supra*.

Plaintiffs' claims arising from the following post-October 18, 2022 encounters are timely and therefore remain pending against the Sheriff Defendants: (1) the October 20, 2022 Lawrence Interaction; and (2) the June 28, 2023 Mealey Interaction.

**B. Personal Involvement of the Sheriff Defendants in Acts Underlying Plaintiffs' Section 1983 Claims.**

Next, the Court turns to the issue of personal involvement. The Sheriff Defendants urge that several of Plaintiffs' Section 1983 claims must be dismissed for failure to identify the specific Sheriff Defendants' personal involvement in the events at issue.

**i. Sheriff Defendants' Personal Involvement in June 28, 2023 Mealey Interaction.**

The Sheriff Defendants urge that Mealey's claims against them should be dismissed because the only interaction that is not time-barred, the June 28, 2023 Mealey Interaction, alleges wrongs by BRPD rather than the Sheriff Defendants. (Doc. 88-1 at 17–18).

Plaintiffs respond that the Sheriff Defendants are implicated in Mealey's claims because they allege that "Mealey was subjected to a visual [body] cavity search at EBRPP, involving squatting and coughing." (Doc. 91 at 11). Plaintiffs urge that EBRPP is operated by Sheriff Gautreaux, and thus, the Sheriff Defendants remain responsible for these allegations. (*Id.*).

The Sheriff Defendants respond that Plaintiffs neither allege in their Complaint nor argue in their Opposition brief that any individual EBRSO deputy

Defendant was involved in or even present for the alleged searches of Mealey at EBRPP. (Doc. 94 at 8). The Sheriff Defendants contend that "personal involvement is an essential element of a claim against a public official in his individual capacity, and a plaintiff must enunciate a set of facts that illustrate each defendant's participation in the alleged violation." (*Id.* (citing *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)).

It is well settled that "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson*, 709 F.2d at 382 (citing *Rizzo v. Goode,* 423 U.S. 362, 371–72, 377 (1976) (affirmative link needed between injury and conduct of defendant)). The Court agrees with the Sheriff Defendants that Plaintiffs neither allege in their Complaint nor raise in their Opposition briefing any alleged personal involvement of the EBRSO deputy Defendants during the June 28, 2023 Mealey Interaction. Although Plaintiffs allege that the Sheriff Defendants remain liable for Plaintiffs' Section 1983 claims arising out of the June 28, 2023 Mealey Interaction because Sheriff Gautreaux operates EBRPP, "Section 1983 does not create supervisory or *respondeat superior* liability." *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (citing *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002)). "Rather, a plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Brown*, 911 F.3d at 245 (citing *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)). Here,

not only do Plaintiffs fail to allege that Sheriff Gautreaux was personally involved in the alleged search of Mealey at EBRPP, but Plaintiffs specifically state that each of their Section 1983 claims ***is not*** asserted against Gautreaux.

Without more from Plaintiffs tying the Sheriff Defendants to the June 28, 2023 Mealey Interaction, Plaintiffs' Section 1983 claims arising out of the June 28, 2023 Mealey Interaction against the Sheriff Defendants will be **DISMISSED WITH PREJUDICE**.

**ii. Sheriff Defendants' Personal Involvement in October 20, 2022 Lawrence Interaction.**

The Sheriff Defendants also argue that Plaintiffs' claims arising out of the October 20, 2022 Lawrence Interaction "suffer from the problem of group pleading: they fault the seven law enforcement defendants as a group without factual allegations to support that any particular defendant committed the alleged constitutional violations." (Doc. 88-1 at 19). Plaintiffs respond that they have alleged specific facts showing each EBRSO deputy Defendant's personal involvement in the alleged constitutional violations. (Doc. 91 at 12).

As described, personal involvement is an essential element of Plaintiffs' Section 1983 claims against the Sheriff Defendants. *Thompson*, 709 F.2d at 382 ("Personal involvement is an essential element of a civil rights cause of action."); *King v. Herbert*, No. CV 17-406-SDD-EWD, 2020 WL 2449245, at *2–*4 (M.D. La. May 12, 2020) (same). In another BRAVE Cave case, this Court held, however, that an officer "can be found personally liable if he was a 'full, active participant in the search [or seizure], not a mere bystander' and if he 'performed

police functions that were integral to' them." *Brown v. Lawrence*, No. CV 23-1313-JWD-EWD, 2025 WL 553652, at *5 (M.D. La. Feb. 19, 2025) (deGravelles, J.), *aff'd and remanded sub nom. Ternell L. Brown v. Matthew Wallace*, No. 25-30135, 2026 WL 2364596 (5th Cir. Aug. 14, 2026) (citing *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989); *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990); *Creamer v. Porter*, 754 F.2d 1311, 1316 (5th Cir. 1985)); *Magee v. Pike Cnty.*, No. 19-52, 2019 WL 7040627, at *5–6 (S.D. Miss. Dec. 20, 2019)).

Here, Plaintiffs allege that Jenkins, Phelps, Lawrence, Jr., Dartez, and Cooper were involved in Lawrence's arrest, the theft of Lawrence's cash, the strip search of Lawrence outside of his home, and the transfer of Lawrence to a black site. (Doc. 81 ¶¶ 131–136). Once at the black site, Plaintiffs allege that Cooper, Jenkins, Phelps, and Lawrence, Jr., were present for another strip search and visual body cavity search of Lawrence. (*Id.* ¶ 144–145). Plaintiffs allege that while handcuffed, these officers pulled down Lawrence's pants and undershorts and made him squat and cough. (*Id.*).

Taking these facts in the light most favorable to Plaintiffs and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs' Section 1983 claims against the Sheriff Defendants arising out of the October 20, 2022 Lawrence Interaction shall survive the instant Motion.[11]

[11] Courts routinely analyze this issue on summary judgment. *See King*, 2020 WL 2449245, at *2–*4 (M.D. La. May 12, 2020) (dismissing claims based on lack of summary judgment evidence showing that particular defendants were personally involved in events underlying plaintiff's Section 1983 claim, emphasizing that "[t]he summary judgment evidence in the record demonstrates that the only LSP Defendant to have personal involvement in the events

Notably missing from Plaintiffs' Complaint, however, are any allegations indicating that Guillot was involved in the October 20, 2022 Lawrence Interaction. Accordingly, Plaintiffs' claims against Guillot arising out of the October 20, 2022 Lawrence Interaction will be **DISMISSED WITH PREJUDICE**.[12]

### C. Whether the Sheriff Defendants are Entitled to Qualified Immunity with Respect to Plaintiffs' Section 1983 Individual Capacity Claims.

Next, the Sheriff Defendants argue that they are entitled to qualified immunity, which shields them from Plaintiffs' Section 1983 individual capacity claims against them. (Doc. 88-1 at 16–38). Plaintiffs disagree. (Doc. 91 at 6–11).

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Ezell v. Seal*, No. CV 23-1514-SDD-EWD, 2025 WL 3124046, at *4 (M.D. La. Nov. 7, 2025).

giving rise to [plaintiff's] Fourth Amendment claim was Trooper Thompson[.]"); *Christopher James Carter v. Jason Mitchell, et al.*, No. DR-23-CV-022-AM-JAC, 2025 WL 5257928, at *4 (W.D. Tex. Feb. 6, 2025), *report and recommendation adopted sub nom. Christopher James Carter, v. Jason Mitchell, et al.*, No. DR-23-CV-0022-AM, 2025 WL 5258207 (W.D. Tex. Mar. 27, 2025) ("Since the undisputed summary judgment evidence shows that Alvarado played no part in any constitutional violation on January 27, 2023, he is entitled to qualified immunity as a matter of law with respect to Plaintiff's first alleged constitutional violation."); *McManus v. St. Tammany Par. Jail*, No. CV 21-1533, 2024 WL 1701937, at *6 (E.D. La. Apr. 19, 2024), *reconsideration denied*, No. CV 21-1533, 2024 WL 3044655 (E.D. La. June 18, 2024) (dismissing individual capacity Section 1983 claims against particular defendants for lack of summary judgment evidence establishing personal involvement).

[12] The Court will continue to refer to the "Sheriff Defendants" collectively for ease of reference, but makes clear that Plaintiffs' claims against Guillot will be dismissed with prejudice.

"In determining whether an official enjoys immunity, [courts] ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

This inquiry is undertaken in light of the specific context of the case, not as a broad, general proposition. *Berry v. Sanders*, No. CV 17-318-BAJ-EWD, 2020 WL 1034627, at *2 (M.D. La. Feb. 14, 2020), *report and recommendation adopted*, No. CV 17-00318-BAJ-EWD, 2020 WL 1033654 (M.D. La. Mar. 3, 2020). Thus, the Court turns to the facts at issue here.

With respect to the October 20, 2022 Lawrence Interaction, Plaintiffs allege the following facts:

(1) Officers confiscated $3,500 from Lawrence, but only booked $185 into evidence;

(2) In the street outside Lawrence's home, officers searched Lawrence, pulled down his pants and undershorts to his knees, and exposed his genitals;

(3) Officers transported Lawrence to a black site and subjected him to another strip-search and visual body cavity search;

(4) Lawrence requested to speak with an attorney, but the officers continued interrogating him;

(5) Officers took Lawrence to EBRPP and booked him;

(6) Upon booking, officers again strip-searched Lawrence; and

(7) Officers did not document any of the strip searches.

(Doc. 81 ¶¶ 131–156).

The Fifth Circuit recently affirmed the Court's denial of qualified immunity to officers in another case arising out of alleged wrongs occurring at the BRAVE Cave. *Brown v. Wallace,* No. 25-30135, 2026 WL 2364596, at *9 (5th Cir. Aug. 14, 2026) ("[W]e AFFIRM the district court's denial of Detective Wallace, Officer Lawrence, and Officer Alvarado-Cruz's 12(b)(6) motions to dismiss on qualified immunity grounds."). There, the Circuit analyzed officers' entitlement to qualified immunity on a motion to dismiss with respect to the *Brown* plaintiff's Section 1983 claim for unreasonable search and seizure. *Id.* at *1–*2, *4.

The *Brown* plaintiff alleged that officers violated her constitutional right to be free from unreasonable searches by subjecting her to a strip and visual body cavity search inside the Brave Cave. *Id.* at *2. She also alleged that officers violated her constitutional right to be free from unreasonable seizure by forcibly transporting her to the Brave Cave and holding her there for several hours. *Id.* The Circuit ultimately affirmed this Court's denial of qualified immunity and remanded for discovery and further proceedings, emphasizing the following:

> [B]oth our precedent and "a robust consensus of cases of persuasive authority" require an officer to have at least a reasonable suspicion that

> an arrestee not being released into the general population is hiding or concealing weapons or contraband before subjecting the arrestee to a strip and body cavity search. We therefore conclude that it is clearly established that, at a minimum, [that] Officer [] needed reasonable suspicion that [the *Brown* plaintiff] was hiding or concealing weapons or contraband in a body cavity to justify her search of [the *Brown* plaintiff's] vagina and buttocks.

*Id.* at *8 (internal citations omitted).

The Circuit further described the relevant law on the issue as follows:

> In *Florence v. Board of Chosen Freeholders*, the Supreme Court held constitutional routine intake searches (i.e., suspicionless searches) of detainees prior to being released into the "general population," "regardless of the circumstances of the [detainee's] arrest." As relevant here, part of the intake searches at issue included an officer looking at the detainee's "body openings," and requiring the detainee to "lift his genitals, turn around, and cough in a squatting position." The Court expressly reserved, however, what types of searches "would be reasonable" when "a detainee [is] held without assignment to the general jail population and without substantial contact with other detainees." The Court explained that the "circumstances before the Court . . . [did] not present the opportunity to consider . . . whether an arrestee whose detention has not yet been reviewed by a magistrate or other judicial officer, and who can be held in available facilities removed from the general population, may be subjected to the types of searches at issue" in that case. Here, [the *Brown* plaintiff] was not released into the general population.
>
> To be sure, "*Florence* abrogated some . . . decisions to the extent they required that persons arrested on minor offenses be excepted from blanket strip searches even when they were entering a general prison population." However, "*Florence* did not . . . disturb recognized Fourth Amendment restrictions against such searches of persons held apart from the general prison population."
>
> In *Kelly v. Foti*, [the Fifth Circuit] held that jail officials may "strip and cavity search" "a person arrested for a minor offense and detained pending the posting of bond *only if* they possess a reasonable suspicion that [the arrestee] is *hiding* weapons or contraband."
>
> In *Stewart v. Lubbock County*, [the Fifth Circuit] held unconstitutional a department policy permitting strip searches of any arrestee, including

> minor offenders awaiting bond, when "no reasonable suspicion existed that they . . . might possess weapons or contraband," and explained that officers must have reasonable suspicion that an individual might possess weapons or contraband to conduct a strip search.
>
> In *Williams v. Kaufman County*, [the Fifth Circuit] described its previous holdings that officers must have reasonable suspicion to strip search individuals who have committed minor offenses "in custodial situations" and that "outside the prison context" officers need at least individualized reasonable suspicion to conduct a strip search.
>
> In *Jimenez v. Wood County*, [the Fifth Circuit's] en banc court acknowledged that "longstanding precedent" requires reasonable suspicion to conduct strip searches of individuals who were arrested for minor offenses for weapons or contraband.
>
> At least four other circuits have required a more particularized suspicion that contraband is concealed for an officer to lawfully conduct a body cavity search. The First Circuit in *United States v. Barnes* concluded that there must be "a more particularized suspicion that contraband is *concealed*" prior to conducting a visual body cavity search of the defendant, even though the "initial strip search" of the defendant "was clearly justified given [his] arrest for a drug trafficking crime." The Second Circuit in *Sloley v. VanBramer* held that "a visual body cavity search conducted as an incident to a lawful arrest for any offense must be supported by 'a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity.'" The Seventh Circuit in *Campbell v. Miller* held "that the police needed to have a reasonable suspicion that [the arrestee] was concealing contraband in order to justify the [strip and body cavity] search under . . . [the Supreme Court's decision in] *Robinson*." The Ninth Circuit stated in *United States v. Mendez-Jimenez* that "[a] clear indication or plain suggestion that the suspect is concealing contraband *within his body* is required before a search beyond the body's surface may be authorized."

*Id.* at *7 (citing *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318 (2012); *Kelly v. Foti*, 77 F.3d 819 (5th Cir. 1996); *Stewart v. Lubbock Cnty.*, 767 F.2d 153 (5th Cir. 1985); *Williams v. Kaufman Cnty.*, 352 F.3d 994 (5th Cir. 2003); *Jimenez v. Wood Cnty.*, 660 F.3d 841 (5th Cir. 2011) (en banc); *United States v. Barnes*,

506 F.3d 58 (1st Cir. 2007); *Campbell v. Miller*, 499 F.3d 711 (7th Cir. 2007); *United States v. Mendez-Jimenez*, 709 F.2d 1300 (9th Cir. 1983) (additional citations omitted)).

The Circuit further emphasized that at the motion to dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Brown,* 2026 WL 2364596, at *6 (emphasis in original) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (internal quotation marks omitted) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Here, Plaintiffs allege that the Sheriff Defendants' strip and visual body cavity searches of Lawrence were unreasonable, that the Sheriff Defendants knew of the wrongfulness of their actions, and that the Sheriff Defendants failed to document any of the strip or cavity searches of Lawrence. (Doc. 81 ¶¶ 131–156, 390). Plaintiffs do not allege that the Sheriff Defendants had reasonable suspicion to believe Lawrence was hiding weapons or contraband, nor do they allege any other potential justification for the Sheriff Defendants' strip and visual body cavity searches of Lawrence. (*See generally id.*). Accordingly, accepting Plaintiffs' well-pleaded allegations as true, and based on the Fifth Circuit's decision in *Brown*, the Court will deny the Sheriff Defendants' invocation of qualified immunity with respect to the strip and visual body cavity searches of Lawrence.

**D. Whether Plaintiffs State a Claim Under Section 1983 (Count I).**

Next, the Sheriff Defendants argue that if the Court finds that they are not entitled to qualified immunity, Plaintiffs still fail to state a claim under Section 1983. Again, Plaintiffs disagree. The Court will analyze each Section 1983 claim in turn.

**i. Unreasonable Search and Seizure Under Section 1983.**

First, the Sheriff Defendants argue that Lawrence's unreasonable seizure claim fails because his arrest was made pursuant to a warrant and was therefore lawful. (Doc. 88-1 at 21). The Sheriff Defendants urge that Lawrence's unreasonable search claim fails because the strip search of Lawrence occurred incident to arrest and was therefore lawful. (*Id.*). Plaintiffs respond that they have alleged facts showing no reasonable suspicion for the invasive searches, particularly those performed in public. (Doc. 91 at 12).

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. CONST. amend. IV; *see also Brown,* 2026 WL 2364596, at *4. "Warrantless searches and seizures are 'per se unreasonable unless they fall within a few narrowly defined exceptions.'" *Brown,* 2026 WL 2364596, at *4 (internal citations omitted). Additionally, "[i]t is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause." *Id.* at *5 (citing *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) (quoting *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc)). Clearly, whether the Sheriff Defendants conducted their search and seizure of Lawrence pursuant to a warrant is relevant to the Court's analysis.

In considering a motion to dismiss for failure to state a claim, however, a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)). The Complaint does not refer to the purported Lawrence arrest warrant. (*See generally* Doc. 81). Instead, the Complaint generally alleges that "[t]hose seizures that were without warrant or probable cause constituted unreasonable seizures" and "for each of the searches and arrests of Plaintiffs that were pursuant to a warrant, on information and belief the applying officer intentionally or recklessly included false statements in the warrant application." (Doc. 81 ¶¶ 394, 398). The Sheriff Defendants acknowledge that "Plaintiffs do not allege whether Houston's October 2022 arrest was pursuant to a warrant[.]" (Doc. 88-1 at 28).

Along with their Motion to Dismiss, the Sheriff Defendants submitted a purported arrest warrant for Lawrence along with the purported affidavit underlying same. (Doc. 88-2). The Court may consider an attachment to a motion to dismiss when it is: (1) attached to the motion to dismiss; (2) referenced in the Complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Causey v. Sewell Cadillac–Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000)).

In *Willis v. Ballance*, the United States District Court for the Western District of Louisiana provided the following discussion regarding whether to consider an arrest warrant on a motion to dismiss:

> Here, the Complaint discusses how [plaintiff] was arrested "on a warrant." [] Additionally, the Complaint alleges that Captain Crawford perjured himself in the affidavit. [] [Defendant] has attached the affidavit and warrant to his Motion to Dismiss. [] The affidavit is important to [plaintiff's] claims because it provides the Court with the factual basis for the warrant. [] The warrant is central to [plaintiff's] claims as it would be the basis for his arrest, which all of his claims arise out of. [] Thus, the Court will not only consider the Complaint in its ruling, but also [the] affidavit and the arrest warrant.

*Willis v. Ballance*, No. CV 25-0496, 2025 WL 2965016, at *3 (W.D. La. Oct. 17, 2025).[13]

Here, whether to consider the arrest warrant on the instant Motion is a close call. Although the arrest warrant is undoubtedly relevant to the Court's inquiry, the Complaint scarcely mentions an arrest warrant, much less makes it "central" to Plaintiffs' claims. Accordingly, the Court finds it appropriate to defer consideration of the purported arrest warrant and affidavit underlying same to the summary judgment stage of these proceedings. Accepting Plaintiffs' allegations as true, the Court finds that Plaintiffs have stated a claim for unreasonable search and seizure against the Sheriff Defendants.

---

[13] *See also Badeaux v. St. Charles Par. Sheriff's Off.*, No. CV 20-3197, 2021 WL 1909722, at *3 (E.D. La. May 12, 2021) ("[Plaintiff's] allegation incorporates the warrant by reference, so insofar as either party is able to produce the warrant, the Court ought to consider its actual terms in assessing [plaintiff's] ability to state a plausible claim for relief."); *Blakely v. Andrade*, 360 F. Supp. 3d 453, 473 (N.D. Tex. 2019) (Arrest warrant is "referenced in Plaintiffs' second amended complaint and appear to be central to their claims, so they may also be properly considered without converting the motion to dismiss into a motion for summary judgment.").

**ii. Excessive Force Under Section 1983.**

Second, the Sheriff Defendants argue that Plaintiffs cannot prevail on an excessive force claim under Section 1983 based on the alleged strip and visual body cavity searches of Lawrence. (Doc. 88-1 at 24–25). Plaintiffs respond that the strip and visual body cavity searches of Lawrence constituted excessive force, relying on *Hamilton v. Kindred*, 845 F.3d 659 (5th Cir. 2017) and *Roe v. Tex. Dep't of Protective & Regul. Servs.*, 299 F.3d 395, 409 (5th Cir. 2002). (Doc. 91 at 15).

To state a violation of the Fourth Amendment's prohibition on excessive force, Plaintiffs must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable. *Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008) (citing *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible. *Id.* (citing *Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir. 1996)). Specifically, the court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Bush*, 513 F.3d at 501 (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)).

Courts have upheld claims for excessive force arising out of body cavity searches. "The Fifth Circuit ha[s] noted that few searches are more intrusive than a body cavity search, and "[t]he more intrusive the search, the heavier is the

[G]overnment's burden of proving its reasonableness." *Marks v. Smith*, 241 F. Supp. 3d 726, 733–34 (E.D. La. 2017) (citing *U.S. v. York*, 578 F.2d 1036, 1041 (5th Cir. 1978); *Roe*, 299 F.3d at 409 ("Supreme Court and Fifth Circuit precedent 'plainly established [that] . . . [a] strip or body cavity search raises serious Fourth Amendment concerns.'"); *Elliott v. Lynn*, 38 F.3d 188 (5th Cir. 1994) (holding visual body cavity searches conducted in the view of others may be reasonable *if there were exigent circumstances* ); *Moore v. Carwell*, 168 F.3d 234 (5th Cir. 1999) (holding a strip search of a male prisoner by a female officer in the absence of exigent circumstances could entitle [the plaintiff] to relief for a Fourth Amendment violation"); *Oliver*, 276 F.3d at 745 n.13 (recognizing that prisoners have a right to bodily privacy that provides limitations on the manner in which searches may be carried out); *Hamilton*, 845 F.3d at 662 (upholding district court's finding that plaintiffs had a viable excessive force claim for a body cavity search that occurred on a public roadway)). Based on this precedent, and accepting Plaintiffs' allegations as true, Plaintiffs have stated a claim for excessive force under Section 1983 arising out of the October 20, 2022 Lawrence Interaction.

**iii. *Franks* Liability Under Section 1983.**

Third, the Sheriff Defendants argue that they cannot be liable under *Franks v. Delaware*, 438 U.S. 154 (1978), because Plaintiffs do not allege any facts in the Complaint suggesting that the affidavit underlying the purported Lawrence arrest warrant contained any false statements or omissions. (Doc. 88-1 at 28). Plaintiffs respond that their Complaint "points to other lawsuits filed against Sheriffs

Defendants, as well as journalists' investigations and public reports, which identify additional allegations of how Sheriffs Defendants provided false statements in order to obtain arrest warrants, in pursuit of the larger police conspiracy and abuse of power." (Doc. 91 at 10). Plaintiffs further allege that they have a reasonable basis to assert that the Sheriff Defendants lied to obtain the purported Lawrence arrest warrant. (*Id.*).

Liability under *Franks* can arise from either material misstatements or material omissions in warrant affidavits.[14] *Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021) (citing *Michalik v. Hermann,* 422 F.3d 252, 258 n.5 (5th Cir. 2005); *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980) (citing cases)). Functionally, the holding of *Franks v. Delaware* is an exception to the independent intermediary doctrine, which provides that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Terwilliger*, 4 F.4th at 281 (citing *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (citation and internal quotation marks omitted)). But "the chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Id.*

[14] *Franks* arose in the context of a search warrant, but according to the Fifth Circuit, its rationale extends to arrest warrants. *Terwilliger*, 4 F.4th at 281 (citing *Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (en banc)).

The Fifth Circuit has emphasized that "*Franks*, of course, requires more than bare assertions of falsehood." *Terwilliger*, 4 F.4th at 283. Instead, assertions of falsehood "must be accompanied by an offer of proof . . . [and] point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Id.* (citing *Franks*, 438 U.S. at 171).

Although proof is not required on the instant Motion to Dismiss, the Sheriff Defendants rightly point out that Plaintiffs have not identified any alleged false statements or omissions specific to the purported Lawrence arrest warrant. Instead, Plaintiffs allege in a conclusory fashion that "the applying officer intentionally or recklessly included false statements in the warrant application." (Doc. 88-1 at 28). It is well settled that a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor does a Complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[15] *Twombly*, 550 U.S. at 557.

Here, Plaintiffs' conclusory assertion alone, absent any supporting facts, is insufficient to state a claim. Plaintiffs' *Franks* liability claim under Section 1983 against the Sheriff Defendants will be **DISMISSED WITH PREJUDICE.**

---

[15] By contrast, in *Terwilliger*, the Fifth Circuit found the following facts sufficient to withstand the test of *Iqbal/Twombly*: "Plaintiffs alleged that the [d]efendants deliberately excluded relevant information that would have weighed against individualized probable cause, such as video evidence, witness interviews, and membership in motorcycle clubs [. . .]" Plaintiffs have alleged no such facts here.

**iv. Theft of Property Under Section 1983.**

Fourth, Plaintiffs allege that officers confiscated $3,500 in cash from Lawrence but only booked $185 into evidence. (Doc. 81 ¶¶ 133–34). The Sheriff Defendants urge that Plaintiffs' allegations are insufficient to state a claim under the *Parratt/Hudson* doctrine, which indicates that "a State actor's random and unauthorized deprivation of a person's property, whether negligent or intentional, does not result in a violation of due process rights if the State provides an adequate post-deprivation remedy." (Doc. 88-1 at 29 (internal citations omitted)). The Sheriff Defendants contend that the Fifth Circuit has recognized that Louisiana law provides an adequate remedy for deprivation of property. (*Id.*).

Citing no case law, Plaintiffs respond that the "*Parratt/Hudson* doctrine does not bar this claim because Plaintiffs have alleged that the theft was not random and unauthorized but part of a pattern of misconduct by EBRSO deputies." (Doc. 91 at 15).

"Random and unauthorized deprivations of property by state officials do not violate the federal constitution if an adequate post-deprivation state remedy exists." *Spencer v. Stokes*, No. CIVA10-20-JJB-DLD, 2010 WL 1050088, at *1 (M.D. La. Feb. 8, 2010), *report and recommendation adopted*, No. CIV.A 10-50-JJB-DLD, 2010 WL 1087922 (M.D. La. Mar. 19, 2010) (citing *Parratt v. Taylor,* 451 U.S. 527 (1981); *Hudson v. Palmer,* 468 U.S. 517 (1984)). This Court has held that "Louisiana has ample remedies under which the plaintiff may proceed against the defendants for recovery of his property or for the reimbursement of its

loss." *Spencer*, 2010 WL 1050088, at *1 (citing *Marshall v. Norwood,* 741 F.2d 761 (5th Cir. 1984)); *Brooks v. Stalder*, No. CIV.A. 07-654-A, 2007 WL 2874274, at *1 (M.D. La. Sept. 26, 2007) (same). Without any contrary precedent from Plaintiffs, Plaintiffs' theft of property claim against the Sheriff Defendants under Section 1983 will be **DISMISSED WITH PREJUDICE**.

**v. Substantive Due Process Under Section 1983.**

Fifth, the Sheriff Defendants argue that Plaintiffs' allegations do not meet the extremely high standard requiring the Sheriff Defendants' actions to "shock the conscience." (Doc. 88-1 at 32). Plaintiffs respond that the repeated strip and visual body cavity searches, some of which were conducted in public, and the illegal detention of Lawrence at a black site constitute egregious conduct that violates fundamental rights sufficient to "shock the conscience." (Doc. 91 at 16).

Without deciding whether Plaintiffs' allegations "shock the conscience," the Court finds that Plaintiffs' substantive due process claims are not cognizable, for the reasons articulated by the Fifth Circuit in *Bustillos v. El Paso County Hospital District*:

> The Supreme Court has "always been reluctant to expand the concept of substantive due process." *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.' " *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ).

> [Plaintiff's] substantive due process claims rest on the same underlying acts that constituted the alleged unlawful search and seizure. Because the Fourth Amendment "fully embraces" these allegations, the district court did not err in dismissing the substantive due process claims. *See Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 411 (5th Cir. 2002).

*Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 219–20 (5th Cir. 2018). The same result must issue here. Because the facts underlying Plaintiffs' substantive due process claims rest on the same facts underlying Plaintiffs' unreasonable search and seizure and excessive force claims, and without any contrary precedent from Plaintiffs, the Court will **DISMISS** Plaintiff's substantive due process claim under Section 1983 against the Sheriff Defendants **WITH PREJUDICE**.

#### vi. Civil Conspiracy Under Section 1983 (Count II).

Sixth, the Sheriff Defendants contend that Plaintiffs have not alleged sufficient facts to state a Section 1983 conspiracy claim. The Sheriff Defendants urge that Plaintiffs allege no facts indicating that the Sheriff Defendants entered into an agreement with anyone, much less with any BRPD Defendant to violate Plaintiffs' constitutional rights.[16] (*Id.*). The Sheriff Defendants aver that Plaintiffs fail to allege the time, place, or other circumstances of an alleged agreement, and that merely alleging that officers of different agencies were present during an arrest and search is insufficient to show an agreement to violate Plaintiffs' rights. (*Id.* at 35).

Plaintiffs respond that they have alleged sufficient facts to support their conspiracy claim because the Complaint alleges that the Sheriff Defendants worked

---

[16] The Sheriff Defendants also argue that Plaintiffs have not established that an actual violation of their constitutional rights has occurred. (Doc. 88-1 at 34). For the reasons already described in detail, the Court disagrees.

in concert with BRPD officers to violate Plaintiffs' constitutional rights. (Doc. 91 at 16).

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (cleaned up). "To prevail on a conspiracy claim under § 1983, the plaintiffs must show (1) the existence of a conspiracy involving state action and (2) a deprivation of their civil rights in furtherance of the conspiracy." *Plaisance v. Reese*, 353 F. Supp. 2d 735, 738 (E.D. La. 2004); *see also Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 373–74 (M.D. La. 2022).

As to the first, plaintiff must bring forward "facts tending to show that the defendants entered into an agreement to deprive him of his [rights]." *Leggett v. Williams*, 277 F. App'x 498, 501 (5th Cir. 2008). "[A] conspiracy may be proved by circumstantial evidence." *Mack v. Newton*, 737 F.2d 1343, 1350 (5th Cir. 1984) (citations omitted). Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C.A. § 1983." *Leggett*, 277 F. App'x at 501 (citing *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986) (internal quotation marks omitted)).

Here, Plaintiffs allege in a conclusory manner that the Sheriff Defendants "entered into a conspiracy to use their state powers to deprive Plaintiffs of their civil rights, when they worked together to strip-search Plaintiffs and perpetuate the other harms described [in the Complaint]." (Doc. 81 ¶ 406). Plaintiffs allege no facts specific

to the October 20, 2022 Lawrence Interaction regarding any agreement whatsoever. A conclusory allegation that the Sheriff Defendants engaged in a civil conspiracy, without supporting facts, is insufficient to state a claim on which relief may be granted.

Plaintiffs' Section 1983 civil conspiracy claim (Count II) against the Sheriff Defendants will be **DISMISSED WITH PREJUDICE.**

### vii. Failure to Intervene/Bystander Liability Under Section 1983 (Count III).

Seventh, the Sheriff Defendants argue that Plaintiffs fail to identify specific actions by each Sheriff Defendant to support their failure to intervene/bystander liability claim. (Doc. 88-1 at 36). Plaintiffs respond, again, that their Complaint alleges sufficient facts to support their failure to intervene claim. (Doc. 91 at 16).

"[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale*, 45 F.3d at 919 (citations omitted). "[A]n officer may be liable under § 1983 under [this] theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted).

A plaintiff must establish that the officer "knows that a fellow officer is violating an individual's constitutional rights," and this logically requires that the officer observe the violation. *See McDonald v. McClelland*, 779 F. App'x 222, 226 (5th Cir. 2019) (per curiam) (finding that plaintiff's bystander liability claim failed as

a matter of law because "the uncontroverted evidence [was] that none of the defendant officers saw any other officer kick [the plaintiff]" and because "[b]ystander liability cannot attach if the officer did not know about and acquiesce in the constitutional violation.") (citing *Whitley*, 726 F.3d at 647); *see also Imani*, 614 F. Supp. 3d at 371–72.

Here, Plaintiffs allege that Jenkins, Phelps, Lawrence, Dartez, and Cooper were present for the alleged strip search of Lawrence outside of his home. (Doc. 81 ¶ 131, 136). Plaintiffs allege that Cooper, Jenkins, Phelps, and Lawrence were present for the visual body cavity search of Lawrence at the black site. (*Id.* ¶¶ 144–145). Plaintiffs allege that the "officers knew what they were doing was wrong." (*Id.* ¶ 154). Plaintiffs further allege that the Sheriff Defendants "each observed their fellow officers violating Plaintiffs' constitutional rights, had a reasonable opportunity to intervene, and chose not to act." (*Id.* ¶ 408).

Accepting Plaintiffs' allegations as true, as the Court must at this stage of the litigation, the Court finds that Plaintiffs have sufficiently stated a claim against the Sheriff Defendants for failure to intervene under Section 1983.

**viii. Conclusion—Section 1983 Claims.**

For the reasons described, the following Section 1983 claims against the Sheriff Defendants arising out of the October 20, 2022 Lawrence Interaction will be **DISMISSED WITH PREJUDICE**: (1) theft of property; (2) *Franks* liability; (3) violation of substantive due process; and (4) civil conspiracy.

The following Section 1983 claims against the Sheriff Defendants arising out of the October 20, 2022 Lawrence Interaction remain pending before the Court: (1) unreasonable search and seizure; (2) excessive force; and (3) failure to intervene.

**E. Whether Plaintiffs Have Stated a *Monell* Claim (Count IV).**

The Sheriff Defendants argue that Plaintiffs have not asserted a *Monell* claim against Sheriff Gautreaux or the City of Baton Rouge/Parish of East Baton Rouge. (Doc. 88-1 at 38). Because the instant Motion is advanced only as to Sheriff Gautreaux, however, the Court will not resolve Plaintiffs' claims against the City of Baton Rouge/Parish of East Baton Rouge on this Motion. (*Id.*).

Plaintiffs assert *Monell* claims against Gautreaux on several grounds: (1) improper hiring and retention practices; (2) an express policy; and (3) failure to properly train, supervise, and discipline. (Doc. 81 ¶ 412). The Court will address each in turn.

**i. Improper Hiring and Retention Practices.**

First, Plaintiffs assert a *Monell* claim against Sheriff Gautreaux based on alleged improper hiring and retention practices. (Doc. 81 ¶¶ 409–413). The Sheriff Defendants argue that although Plaintiffs devote an entire section of their Complaint to the alleged wrongful retention of Lawrence, Jr., he is a BRPD Defendant, not a Sheriff Defendant. (Doc. 88 at 39). The Sheriff Defendants urge that Plaintiffs fail to make any similar allegations applicable to them, and Plaintiffs' sole allegation regarding Gautreaux's alleged improper retention of EBRSO officer

Demarcus Braxton does not persuade otherwise because Braxton is not a party to this case.[17] (*Id.*).

Plaintiffs respond that they have "alleged that Sheriff Gautreaux hired and retained deputies with histories of misconduct, including Deputy Braxton[.]" (Doc. 91 at 17). But as the Sheriff Defendants point out, Braxton is not a Defendant in this case, and Plaintiffs do not allege that he was involved in the October 20, 2022 Lawrence Interaction in any way. (Doc. 94 at 22). Thus, Plaintiffs' *Monell* claim against Sheriff Gautreaux based on improper hiring and retention fails and will be **DISMISSED WITH PREJUDICE**.

**ii. Policy Liability.**

Second, Plaintiffs allege a *Monell* claim against Sheriff Gautreaux based on an express policy. (Doc. 81 ¶ 409–413). The express policy that Plaintiffs allege is at issue, however, is the "unconstitutional BRPD search policy." (*Id.* at ¶ 412(a)). Plaintiffs do not allege that this claim is based on any EBRSO policy. (*Id.*). Accordingly, Plaintiffs' *Monell* claim against Sheriff Gautreaux based on policy liability fails and will be **DISMISSED WITH PREJUDICE**.

**iii. Failure to Train, Supervise, and Discipline.**

Third, Plaintiffs allege a *Monell* claim against Sheriff Gautreaux based on alleged failure to train, supervise, and discipline. (Doc. 81 ¶ 412). The Sheriff Defendants argue that Plaintiffs fail to allege facts sufficient to establish this claim

---

[17] Plaintiffs allege: "Take, for example, Demarcus Braxton. Sheriff Gautreaux has retained Braxton on the EBRSO force despite a history of abuse of prisoners, excessive force, false statements, and other misconduct." (Doc. 81 ¶ 344).

against Gautreaux. (Doc. 88-1 at 43). Plaintiffs respond that they have sufficiently alleged a systematic failure of accountability at EBRSO, as shown in Paragraphs 233 – 235 of the Complaint. (Doc. 91 at 18). This portion of the Complaint provides:

> Similar to BRPD, the East Baton Rouge Sheriff's Office has its own [history,] extending decades before the July 2016 protests, of excessive force and unconstitutional arrests. More recently, allegations of excessive force and unconstitutional arrest leveled against EBRSO and Defendant Gautreaux have included multiple instances of excessive force through the inappropriate use of tasers, unconstitutional use of mace, and punching and kicking arrestees without justification. Some of these allegations are documented in the following cases: *Davis v. East Baton Rouge Sheriff's Office*, Civil Case No. 08-00708 (M.D. La.) (resolved in private settlement); *Martinez v. Gautreaux*, Civil Case No. 10-00847 (M.D. La.) (resolved in a private settlement); *Plaisance v. East Baton Rouge Sheriff's Office*, Civil Case No. 16-00365 (M.D. La.).
>
> These abuses resulted from a systemic failure of accountability in BRPD and EBRSO.

(Doc. 81 ¶¶ 233–235).

A *Monell* claim may be based on a municipality's alleged failure to train, supervise, or discipline employees. *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). To state a claim for failing to supervise an employee, Plaintiffs must allege "(1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, (2) that the municipality was deliberately indifferent in adopting [these] deficient polic[ies], and (3) that the inadequate training, supervisory, or disciplinary polic[ies] directly caused the violations in question." *Hankins v. Wheeler*, 2022 WL 2208848, at *7 (E.D. La. June 21, 2022) (citing *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020)).

"Deliberate indifference" can be demonstrated in two ways: "[f]irst and most often, deliberate indifference generally requires notice of a pattern of similar

violations at the time the plaintiff's own rights were violated . . . Second, [the Circuit] has noted that in narrow circumstances, when a constitutional violation results as the highly predictable consequence" of a municipality's failure to properly hire, train, supervise, or discipline, "the failure . . . can amount to deliberate indifference." *Robles v. Ciarletta*, 797 F. App'x 821, 833–34 (5th Cir. 2019).

Here, Plaintiffs allege that Gautreaux failed to meaningfully train officers on search practices and constitutional policing, which directly resulted in the wrongful strip and body cavity searches of Lawrence. (Doc. 81 ¶ 412(d)). Plaintiffs further allege that Gautreaux "failed to supervise or discipline officers;" "endorsed unconstitutional conduct;" and "allowed unconstitutional strip search policies." (*Id.* ¶ 419). As to deliberate indifference, Plaintiffs point to other cases that they allege show a pattern of similar violations at the time Plaintiffs' own rights were violated. (*Id.* ¶¶ 233–235). Accordingly, the Court finds that Plaintiffs have adequately stated a *Monell* claim against Gautreaux for failure to train, supervise, or discipline.

**F. Whether Plaintiffs' State Law Claims are Timely.**

The Sheriff Defendants argue that Plaintiffs' state law claims are untimely. Because Section 1983 claims brought in Louisiana adopt Louisiana's one year prescriptive period, the same one year prescriptive period applies to Plaintiffs' state law claims. Plaintiffs urge, however, that the Court should apply a two year prescriptive period to their state law claims under Louisiana Civil Code

article 3493.3, which applies to "crimes of violence." (Doc. 91 at 5). Article 3493.3 provides:

> ***Delictual actions which arise due to damages sustained as a result of an act defined as a crime of violence*** under Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950, except as provided in Article 3496.2, are subject to a liberative prescription of ***two years***. This prescription commences to run from the day injury or damage is sustained.

La. Civ. Code art. 3493.3 (emphasis added).

Plaintiffs urge that they have sufficiently alleged that the strip and visual body cavity searches of Lawrence constituted a sexual battery under Louisiana law, which is defined as a crime of violence under Louisiana Revised Statutes § 14:2(B)(12). (*Id.* at 5–6). Louisiana Revised Statutes § 14:2(B) provides an enumerated list of "crimes of violence," which includes "sexual battery." La. Rev. Stat. § 14:2(B)(12).[18] Sexual battery, in turn, is defined under Louisiana Revised Statutes § 14:43.1 as:

> [T]he ***intentional touching*** of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing[. . .]

---

[18] Louisiana Revised Statutes § 14:2(B) provides:

> B. In this Code, "crime of violence" means an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon. The following enumerated offenses and attempts to commit any of them are included as "crimes of violence":
>
> [. . .]
>
> (12) Sexual battery.

(La. Rev. Stat. § 14:43.1 (emphasis added)).

The Sheriff Defendants respond that because Plaintiffs do not allege that the Sheriff Defendants physically touched Lawrence during the strip and body cavity searches, these facts do not give rise to a "sexual battery" warranting the invocation of the two year prescriptive period in article 3493.3. The Court agrees.

In the Complaint, Plaintiffs define strip and body cavity searches as follows:

> [A] "strip search" occurs when a suspect is required to remove his clothes; and
>
> [A] "visual body cavity search" is one in which the police observe the suspect's body cavities ***without touching them*** (as by having the suspect to bend over, or squat and cough, while naked)[.]

(Doc. 81 ¶ 384 (emphasis added)). Plaintiffs seem to admit, by their own definitions, that the strip and body cavity searches of Lawrence did not include "intentional touching" sufficient to qualify as a "sexual battery" subject to the two year prescriptive period for crimes of violence under Louisiana law. Because this is the only argument Plaintiffs offer to warrant the application of the two year prescriptive period to their state law claims, the Court finds that the one year prescriptive period applies.

Accordingly, Plaintiffs' state law claims against the Sheriff Defendants for violations of the Louisiana Constitution, false arrest, false imprisonment, assault, battery, negligence, negligent hiring and failure to train, and intentional infliction of emotional distress, arising out of events that occurred prior to October 20, 2022, will be **DISMISSED WITH PREJUDICE**.

### G. Whether Plaintiffs Have Stated Claims Under Louisiana Law (Count V, Count VI, Count VII).

Finally, the Sheriff Defendants argue that to the extent Plaintiffs' state law claims are not prescribed, they still fail to state a claim against the Sheriff Defendants under Louisiana law. (Doc. 88-1 at 46). With respect to each state law claim, Plaintiffs simply respond that the "Sheriff Defendants' arguments regarding Plaintiffs' state law claims fail for the same reasons their arguments regarding the federal claims fail." (Doc. 91 at 19). The Court will address each state law claim in turn.

#### i. Unreasonable Search and Seizure Under Louisiana Law (Count V).

First, the Sheriff Defendants argue that Plaintiffs fail to sufficiently allege a state law claim for unreasonable search and seizure for the same reasons that Plaintiffs failed to state a Section 1983 claim for unreasonable search and seizure. Because the Court has extensively considered and ultimately rejected the Sheriff Defendants' arguments regarding Plaintiffs' federal search and seizure claims, the same result must issue here. Plaintiffs' state law claims against the Sheriff Defendants for unreasonable search and seizure arising out of the October 20, 2022 Lawrence Interaction shall remain.

#### ii. False Arrest and False Imprisonment Under Louisiana Law (Count V).

Second, the Sheriff Defendants argue that Lawrence's October 20, 2022 arrest arose out of a facially valid warrant, and therefore, the Sheriff Defendants cannot be liable for false arrest or false imprisonment under Louisiana law. For the reasons

previously described, the Court will not consider the arrest warrant at this time. Accordingly, Plaintiffs' state law claims against the Sheriff Defendants for false arrest and false imprisonment arising out of the October 20, 2022 Lawrence Interaction shall remain at this stage of the litigation.

**iii. Excessive Force Under Louisiana Law (Count V).**

Third, the Sheriff Defendants argue that Plaintiffs fail to sufficiently allege a state law claim for excessive force for the same reasons Plaintiffs failed to state a Section 1983 claim for excessive force. (Doc. 88-1 at 48 ("The Fifth Circuit has stated that 'Louisiana's excessive force tort mirrors its federal constitutional counterpart' as they both analyze whether the use of force was objectively reasonable given the totality of the circumstances")). Because the Court has extensively considered and ultimately rejected the Sheriff Defendants' arguments regarding Plaintiffs' federal excessive force claim, the same result must issue here. Plaintiffs' state law claim against the Sheriff Defendants for excessive force arising out of the October 20, 2022 Lawrence Interaction shall remain.

**iv. Assault and Battery Under Louisiana Law (Count V).**

Fourth, the Sheriff Defendants contend that Plaintiffs' state law claims of assault and battery fail because Plaintiffs do not allege any non-consensual touching of Lawrence's body. (Doc. 88-1 at 49–50).

This Court, however, has permitted Louisiana state law assault and battery claims to proceed when it also allowed federal excessive force claims to proceed, providing the following analysis. *Imani*, 614 F. Supp. 3d at 381.

Louisiana Code of Criminal Procedure Article 220 provides, "A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained." La. Code Crim. Proc. art. 220. "The use of force by law enforcement officers must be tested by the 'reasonable force' standard established by this article. The test precludes 'clearly inappropriate force.'" *Imani*, 614 F. Supp. 3d at 380 (citing *Kyle v. City of New Orleans*, 353 So. 2d 969, 972 (La. 1977) (quoting La. Code Crim. Proc. art. 220, Official Revision Comment (b))).

"The use of force when necessary to make an arrest is a legitimate police function." *Imani*, 614 F. Supp. 3d at 380 (citing *Kyle*, 353 So. 2d at 972). "But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result." *Imani*, 614 F. Supp. 3d at 380 (citing *Kyle*, 353 So. 2d at 972; *Penn v. St. Tammany Par. Sheriff's Off.*, 2002-0893 (La. App. 1 Cir. 4/2/03), 843 So. 2d 1157, 1161 (stating that excessive force transforms authorized use of force into a battery)). "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case." *Imani*, 614 F. Supp. 3d at 380 (citing *Kyle*, 353 So. 2d at 973). "A court must evaluate the officers' actions against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers." *Imani*, 614 F. Supp. 3d at 380 (citing *Kyle*, 353 So. 2d at 973). "The degree of force employed

is a factual issue." *Imani*, 614 F. Supp. 3d at 380 (citing *Kyle*, 353 So. 2d at 973) (additional citations omitted).

Ultimately, "excessive force claims under both federal and Louisiana law turn on whether the use of force was objectively reasonable given the totality of the circumstances. This has been widely recognized by [the Fifth Circuit], Louisiana federal district courts, and the Louisiana Supreme Court." *Imani*, 614 F. Supp. 3d at 380 (citing *Shepherd on behalf of Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 286 (5th Cir. 2019) (collecting cases)).

Because Plaintiffs have alleged that the Sheriff Defendants used "clearly inappropriate force" on Lawrence, the Court will allow Plaintiffs' state law claims for assault and battery to proceed at this stage of the litigation. *See Imani*, 614 F. Supp. 3d at 381 ("In sum, looking at the totality of the circumstances from the facts presented by Plaintiffs, a jury could find that the arresting officers employed "clearly inappropriate force" to the protesters.").

**v. Intentional Infliction of Emotional Distress Under Louisiana Law (Count V).**

Fifth, the Sheriff Defendants contend that Plaintiffs' state law claim of intentional infliction of emotional distress ("IIED") fails because the alleged strip and visual body cavity searches did not involve physical contact. (Doc. 88-1 at 51). The Sheriff Defendants also rely on the purported Lawrence arrest warrant to indicate that the searches of Lawrence were conducted incident to arrest and were therefore lawful. (*Id.* at 52). The Sheriff Defendants posit that Plaintiffs have not sufficiently alleged that the Sheriff Defendants' conduct was intended to cause severe emotional

distress or that they were aware that severe emotional distress would be substantially certain to result from the searches of Lawrence. (*Id.*).

Under Louisiana law, Plaintiffs must establish the following to recover for IIED: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Imani*, 614 F. Supp. 3d at 377 (citing *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)).

Viewing the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs state a claim for IIED against the Sheriff Defendants arising out of the October 20, 2022 Lawrence Interaction.

**vi. Negligence Under Louisiana Law (Count V).**

Sixth, the Sheriff Defendants urge that "[u]nder Louisiana law, a 'police officer has a duty to act reasonably under the totality of the circumstances[,]'" and here, the Sheriff Defendants' actions were reasonable under the totality of the circumstances. (Doc. 88-1 at 53–54 (internal citations omitted)). Viewing the facts in the light most favorable to Plaintiffs, and for reasons extensively discussed, Plaintiffs plausibly allege that the Sheriff Defendants acted unreasonably, and thus, Plaintiffs' negligence claim arising out of the October 20, 2022 Lawrence Interaction shall remain.

**vii. Negligent Hiring, Training, and Supervision Under Louisiana Law (Count V).**

Seventh, the Sheriff Defendants urge that the Complaint does not contain sufficient factual allegations showing that Sheriff Gautreaux failed to properly hire, train, or supervise deputies. (Doc. 88-1 at 54). For the same reasons previously described with respect to Plaintiffs' *Monell* claim based on Gautreaux's alleged failure to train, supervise, and discipline, the Court disagrees. Plaintiffs' state law claim for negligent hiring, training, and supervision arising out of the October 20, 2022 Lawrence Interaction shall remain.

**viii. Conspiracy Under Louisiana Law (Count VI).**

Eighth, the Sheriff Defendants urge that Plaintiffs have failed to state a conspiracy claim under Louisiana law because they "have alleged no facts to show the individual Defendants agreed to commit an illegal or tortious act against Plaintiffs or that they agreed as to any intended outcome or result." (Doc. 88-1 at 57). For the reasons previously described with respect to Plaintiffs' Section 1983 civil conspiracy claim, the Court agrees. Plaintiffs' conspiracy claim arising out of the October 20, 2022 Lawrence Interaction shall be **DISMISSED WITH PREJUDICE.**

**ix. Vicarious Liability Under Louisiana Law (Count VII).**

Ninth, the Sheriff Defendants argue that Plaintiffs' vicarious liability claim fails because Plaintiffs have not alleged any facts sufficient to show underlying wrongful acts during the search, seizure, and arrest of Lawrence. For the reasons described throughout this Ruling, Plaintiffs have sufficiently alleged several wrongful acts, and therefore, the Sheriff Defendants' argument fails. Plaintiffs'

vicarious liability claim arising out of the October 20, 2022 Lawrence Interaction shall remain.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Sheriff Defendants' **Motion to Dismiss (Doc. 88)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Sheriff Defendant Eno Guillot are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' Section 1983 claims against the Sheriff Defendants based on the following encounters are **DISMISSED WITH PREJUDICE** as prescribed:

(1) the 2019 Lawrence Interactions;

(2) the April 21, 2022 Lawrence Interaction; and

(3) the May 13, 2022 Mealey Interaction.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against the Sheriff Defendants arising out of the June 28, 2023 Mealey Interaction are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the following Section 1983 claims (Count I) against the Sheriff Defendants arising out of the October 20, 2022 Lawrence Interaction are **DISMISSED WITH PREJUDICE:**

(1) *Franks* Liability;

(2) Theft of Property;

(3) Substantive Due Process; and

(4) Civil Conspiracy.

**IT IS FURTHER ORDERED** that Plaintiffs' *Monell* claim (Count IV) against Sheriff Gautreaux arising out of the October 20, 2022 Lawrence Interaction under the following theories are **DISMISSED WITH PREJUDICE:**

(1) Improper Hiring and Retention Practices; and

(2) Policy Liability.

**IT IS FURTHER ORDERED** that Plaintiffs' state law conspiracy claim (Count VI) against the Sheriff Defendants arising out of the October 20, 2022 Lawrence Interaction is **DISMISSED WITH PREJUDICE.**

For clarity, the following claims against the Sheriff Defendants arising out of the October 20, 2022 Lawrence Interaction remain pending:

(1) Plaintiffs' unreasonable search and seizure claims under Section 1983 and state law (Count I, Count V);

(2) Plaintiffs' excessive force claims under Section 1983 and state law (Count I, Count V);

(3) Plaintiffs' failure to intervene/bystander liability claim under Section 1983 (Count III);

(4) Plaintiffs' *Monell* claim based on failure to train, supervise, and discipline (Count IV); and

(5) Plaintiffs' state law claims for false arrest and imprisonment, assault and battery, intentional infliction of emotional distress, negligence, negligent hiring, training, and supervision, and vicarious liability. (Count V, Count VII).

Baton Rouge, Louisiana, this 30th day of September, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**